Mr. Burns, are you ready to proceed? Good afternoon, Your Honors. Hugh Burns of the Commonwealth. I'll be reserving ten minutes for rebuttal. You certainly have that. Before you proceed, I would like you to know that we do not view the risk of confusion to be the applicable standard here. And you spent some time on that on your brief, but you need not go ahead and spend time on that. Obviously, the standard that we apply is the standard from Mills, which was reiterated in the Speeds Act case. Although they seem to have substituted the word possibility for probability, but it would appear that since they were quoting from the Mills case, that they meant to say probability. So we understand what the standard is. Thank you, Your Honor. Well, Speeds Act clarified that instructing the jury that they had to be unanimous with regard to certain decisions in the penalty phase, other than deciding mitigating circumstances, does not violate Mills. The Supreme Court summarized the instructions in Speeds Act saying that the instructions and forms made clear that to recommend a death sentence, the jury had to find unanimously and beyond a reasonable doubt that each of the aggravating circumstances outweighed any mitigating circumstances. Well, this summary of the instructions by the Supreme Court should sound familiar because it is almost word for word. The instructions given here. Well, are we sure about that? Because in Speeds Act, neither the judge's instruction nor the verdict form said anything at all about unanimity with respect to either the aggravating or mitigating factors. Now, this was not unusual in this case because, as we know, the aggravating factors were found at the guilt phase, not at the penalty phase. So there was no need for the court to say anything about that. But isn't this a rather significant difference in the instructions between Speeds Act and the instructions in this case? Well, although the court in Speeds Act didn't use the word unanimous, what it said was in the penalty phase, it said all 12 members of the jury had to find beyond a reasonable doubt that the aggravating factors outweigh the mitigating. And that referred to the balancing, the weighing of the two factors. Yes. And in the guilt phase, when they were finding the aggravating circumstances, they were told all 12 of you must agree. So both as to finding the aggravating circumstances and to the decision on weighing, the jury in Speeds Act was told that they had to be unanimous, not with the word unanimous. But they had to be unanimous with respect to aggravating circumstances at the guilt phase, and they had to be unanimous with respect to the balancing that the aggravating outweighed the mitigating at the sentencing phase. That's correct. Here, what you've got is when you look at the verdict form, and it's I guess on page 128, at least my copy has 128 of the appendix, and you look at two, two we, the jury, have found unanimously. And then you go down to the second box, and it's to me you can parse it out as follows. The one or more aggravating circumstances which outweigh any mitigating circumstances, and they check the box for the whole thing. The next sentence, the aggravating circumstances is or are, and they listed one of them, A. And then the third, the mitigating circumstances is or are. And it looks like they are, in effect, subparts here. So we, the jury, have found unanimously the mitigating circumstance of A. If that's the case, then how can you not say there isn't a reasonable likelihood that the jury perceived that they had to be unanimous with respect to finding a mitigating circumstance? Because that's not the case. Your question and you may be right, as a matter of fact. I'm talking about what you're looking to here is an objective juror. Could an objective juror have a reasonable likelihood that's not greater than 50 percent, that's less than 50 percent? Just a good probability, whatever that number is, that a mitigating circumstance exists. The Supreme Court says no. And the Supreme Court said that on the basis of. The Supreme Court says no what? The Supreme Court says that telling the jury exactly what the jury was told here, that they had to decide unanimously whether or not the aggravating circumstances or circumstance outweighed any mitigating circumstances, does not indicate to the jury that they had to make a unanimous decision in order to find a mitigating circumstance. But the difference of this case from Spisak is that the verdict form here has the sentence, the mitigating circumstance is our blank. That's not in Spisak. That's not in Zettelmoyer either. But you can't read it in isolation. You can't read it as though the words that came before were not there. And the words that came before, which in your question, and also in the defense brief is replaced with an ellipsis removing those words, the words that we're talking about are exactly the words that the Supreme Court used to summarize what the jury was being told in Spisak, which the Supreme Court said was not something that indicated to the jury that they had to make a unanimous decision in order to find a mitigating circumstance. But my point is if you're sitting in the jury room and it goes, we the jury have found unanimously the mitigating circumstance is A, doesn't that mean logically that all 12 of you have found that particular A, which in this case I think means no prior criminal history? Well, I think where we disagree is that the form doesn't say that. What the form says is we the jury have found unanimously one or more aggravating circumstances which outweigh any mitigating circumstances. The aggravating circumstance is R. The mitigating circumstance is R. And I will tell you, you might be right, but you, it looks at this, you also might be wrong and there's a decent possibility or probability, again, maybe not greater than 50% that you are wrong. Mr. Burns, doesn't the verdict form in Spisak differ significantly from what we have as the verdict form and the instructions in this case? I have six things that impressed me in this. It was framed in terms of a determination by we the jury. In other words, the frame of it was we the jury, not you individuals out there, but we the jury. And secondly, it treated the aggravating circumstances and mitigating circumstances the exact same way and distinguished only between the burden of proof. Another difference is that it repeatedly used the word unanimous in connection with both the aggravating and mitigating circumstances. And it provided spaces to list the respective letters of the aggravating and mitigating circumstances unanimously found to exist by, once again, we the jury. And it enumerated the respective aggravating and mitigating circumstances to be considered with a space for a check mark next to each one, which likewise did not provide any apparent mechanism for any individual to disagree what we the jury found. And the sixth difference between Spisak and this case is that each and every juror then was required to sign the form and thereby give content under oath that this is the verdict of we unanimously. Spisak never confronted those six matters in its instructions and verdict form. Well, I would have to disagree with that. First of all, the Spisak form said we the jury. It began by saying we the jury. But the form here continually said Spisak time, it said unanimously time and time again, not once, but repeatedly. Well, I see the word, it looks like twice, on the verdict form here. As I said, the jury in Spisak was told that they had to be unanimous in order to find the aggravating circumstances. In this case, it's a dozen times, no less. Well, I don't know if I would agree with that either. Certainly the word was mentioned in the oral instructions as well. And on the verdict form. Yeah. Well, as I said, I think the word appears, I'm looking at it, I see it twice. But the point is the word unanimously read in context here, as in Spisak, talks about the balancing decision. Well, how does a jury know they're talking about balancing or whether weighing, aggravating, and mitigating? I mean, there's nothing in the instructions or verdict form that says that that unanimously is only when you balance and not when you choose aggravating and mitigating. Well, there's no requirement that the jury be instructed that they must treat the individual mitigating circumstances individually. What the burden is is to not instruct them in such a way so that they believe that they have to reach a unanimous decision in order to find a mitigating circumstance and treat a failure to agree as though that precluded them from finding a mitigating circumstance. How would they know that without being told? They were never told. How would they know that? Because they were never told that they had to reach a unanimous decision on each mitigating circumstance. So you're saying they wouldn't know one way or another. They weren't told one way or the other. They weren't told that they had to be unanimous. And they weren't told they didn't have to be unanimous. That's also true in Spisak. In fact, the Court actually mentioned that in Spisak, the jury was told, well, in Spisak, the Court said, neither the instructions nor the form said anything about how or even whether the jury should make individual determinations that each particular mitigating circumstance existed. They were told nothing about having to be unanimous and they weren't told anything further in Spisak. The same thing is true here. There's no requirement that the jury be given a negative unanimity instruction. That's certainly not found in Mills. It's certainly not found in McCoy. It's done now, I understand, under uniformed charge in Pennsylvania. That's true, but the jury in this case didn't know anything about what the Supreme Court was going to do later with regard to its verdict form. So if we're talking about the effect on the jury, this jury, what the Supreme Court did later with the verdict form really has no bearing on that question. It was said that the aggravating and mitigating circumstances were treated unanimously in this case. That's really not true. When you look at Spisak, you could make the same argument in Spisak because the same instruction was given. The aggravating and mitigating circumstances were not treated unanimously because as to the aggravating circumstances, the jury was told that they had to be unanimous to find them. And as to the mitigating circumstances, they were not told that they had to be unanimous to find them. That is a difference. But also here you have the jury instructions which say, and it almost comes out of the blue, remember again that your verdict must be unanimous. It cannot be reached by a majority vote or by any percentage. It must be the verdict of each and every one of you. And that's sort of a general overarching instruction. And if you're a juror, why would you not? Well, I mean, isn't there a reasonable possibility, reasonable likelihood that a juror would think, okay, I've got to be unanimous with respect to aggravating. I've got to be unanimous with respect to any balancing that I do between aggravating and mitigating. And I also have to be unanimous with respect to mitigating. No more so here than in Spisak. In Spisak, the jurors were told that they had to be unanimous in their verdict. And the description used... And that actually makes sense because they had to be unanimous in finding that the aggravating outweighed the mitigating. In other words, all 12 had to say that. That's right. Otherwise, it's a sentence of life as opposed to a possible capital case. And the Supreme Court said that instructing the jury that they had to be unanimous in deciding that the aggravating circumstances outweigh the mitigating circumstances does not repeat the error in Mills. It does not create a Mills problem. As I was saying, the aggravating and mitigating circumstances were treated differently because the jury was not told that they had to reach a unanimous decision in order to find mitigating circumstances. That's not only a difference, it's a difference that makes all the difference under Spisak. There was no... In effect, when you have... What you're really saying is there's silence as to how the jury is to deal with mitigating circumstances, how they are to find them. But which way does that cut? You're saying that it cuts in your favor, and they're saying, well, a reasonable juror could cut the other way. No, I'm saying that Spisak makes a cut in our favor because that was true in Spisak. The court went out of its way to mention that there was no instruction to the jury about how or even whether they should make determinations about the mitigating circumstances. The only thing that mattered in Spisak was that they were not told that they had to be unanimous in order to determine whether or not the mitigating circumstances were proven. Why isn't that significant? I'm sorry? Why isn't that not a significant difference? It's a significant similarity. In both cases, the fact was that the jury was not told that they had to make a unanimous decision in order to find a mitigating circumstance, and that's why this case turns out the same way. And that's why the Supreme Court, in sending the case back, indicated that a different outcome was probable. That's what a GVR means. No, that's not necessarily true. Well, that's what the Supreme Court said a GVR means in a couple of their cases, which we cited. There's actually the case that I'm thinking about. It's a case from 1996 where they say, look, we sent it back for a host of reasons. It may be that you want the appellate court to take another look at it. It may be that you think that they've likely gotten it wrong and they get the first chance to fix it. It may be that we don't have all the facts. So it can be a host of things. I mean, there's been an article written in 2007 by Professor Chemerinsky, among others, saying that GVRs are done all the time, much more than they used to be, and that a lot of people overreact to them, thinking that somehow I've got to change my opinion when indeed they don't. Well, I'm against overreacting, but I think the cases that say that the GVR indicates that the court believes that a different outcome is probable is something that should be taken into consideration. But what you need to show here is that the facts in SPISAC really apply or are so similar to the facts in this case that we should follow what SPISAC has done. And what I started at the outset as saying to you, that there are facts here on this jury verdict form that are really quite different than what you have in SPISAC, the most important of which is the statement, you actually indicate what the mitigating circumstances is or are. And that's not in SPISAC at all. It's true that it's not in SPISAC that the jurors had to write down what the mitigating circumstances were, and it's been suggested by your question that that's a decisive difference. It's not really a decisive difference. It's not really a material difference, and it's really not much of a difference because the jurors in SPISAC had to decide what the mitigating circumstances were as well. They didn't have to write them down, but they had to decide what they were. And the reason for that is they were instructed that they had to decide unanimously whether or not the aggravating circumstances outweighed those mitigating circumstances. Well, they couldn't even intelligibly discuss them, much less decide unanimously and beyond a reasonable doubt whether they were outweighed by the aggravating circumstances unless they knew what they were. So the jurors in SPISAC, according to their instructions, had to decide what the mitigating circumstances were. True, they didn't have to write them down, but they had to know what they were. But aren't the cases different in more than degree? They're different in kind. In SPISAC, there wasn't a situation that we have here where even the Commonwealth here didn't actually dispute the existence of the only mitigating circumstances checked by the jury. It was a given. You never disputed even that trial. No. And therefore, the lack of a charge as to how to find mitigating circumstances is somewhat more aggravated. Together with the proximity of the unanimity charge, the two cases are not exactly, can't be said to be the same when you didn't dispute the only mitigating factor found and the aggravating factor in SPISAC is automatic almost. The fact that we didn't dispute the only mitigating factor found hardly is an indication that the jury was told that they had to be unanimous in deciding whether or not that mitigating circumstance was proven. But it would cut in favor of finding that the jury here could, there could be more of a likelihood of confusion in our case than in the SPISAC case. Well, likelihood of confusion actually isn't the standard, but the similarity to SPISAC remains. And one of your other objections, Your Honor, was that all the jurors I have no objections. I'm just making observations here, sir. Perhaps objection was not the correct word, but one of your observations was that all the jurors had to sign the verdict form. That was true in SPISAC as well. I believe, therefore, that there are more similarities between this case and SPISAC than there are differences. Of course, you can find differences. The question is whether there are material differences. And one of the things you have to take into account is that this is, of course, an ad predeference case. It means that the state court decision has to be upheld if it's merely reasonable. SPISAC shows that it was, but even before SPISAC was decided, a variety of federal appellate courts had rejected the kind of theory that is at the heart of the appellee's argument and really at the heart of this court's decisions on which he relies, indicating that because an instruction was given that the jury had to be unanimous to make certain decisions in the penalty phase, that that carries over to the mitigating decision. One of the cases that rejected this theory said, quote, that the jury must unanimously agree that the aggravating must outweigh the mitigating is not the same as unanimously agreeing that a mitigating factor exists. That's a quote from Zettelmaier v. Folkemer. The common police court in rejecting the Mills claim in this case in 1995 relied on Zettelmaier. This court's opinion in this case recognized that Zettelmaier is in tension with its later decisions. Well, this tension comes from the fact that Zettelmaier rejected the very argument that this court's later decisions accepted. The state court could reasonably follow Zettelmaier and decide that that was a more reasonable approach when it was faced with a chase of mind. Zettelmaier wasn't reviewed by the Supreme Court, though. Zettelmaier wasn't reviewed by the Supreme Court. No, neither was Fry. The fact, though, is that in 1998, at the time the Supreme Court of Pennsylvania was making its decision in this case, even if you put aside the fact, and it is a fact, we cited the case in our prior brief, that the universe of cases defined by decisions of federal courts having to do with Mills in a situation like this put Fry in the minority. Even if you put that aside, if you look at the fact that the Supreme Court, if it was looking only at decisions of the Third Circuit at the time it made its decision, it was faced with two approaches, Fry and Zettelmaier. And even the district court in this case said that the operative facts in Fry were virtually indistinguishable from those in Zettelmaier. The Fry court attempted to distinguish Zettelmaier on the basis of a word proximity analysis that isn't found in Mills and isn't found in McCoy. Given the outcome in Spizak, I think it's fair to say that the state court could have reasonably concluded that Zettelmaier was the better approach. And given Spizak, I think it could be concluded that Zettelmaier is, in fact, the most reasonable approach that could have been adopted by the state court. What weight do we give the fact that the state Supreme Court did not address the jury instructions focused on the verdict slip? We were over this before, and the fact of the matter is that when the appellee was the appellant in the state Supreme Court, he specifically said, I'm restricting my claim to the form because I want to avoid the result in Zettelmaier. At that time, the only case out there from the Third Circuit was Zettelmaier. Now, I understand that the court has concluded that because there was a reference to the instructions not correcting that error, that all of the instructions are in play. But I think under the AEDPA standard, it might be going a bit too far to say that the state Supreme Court decision was unreasonable because it didn't address the instructions specifically when the appellant was saying, I don't want to rely on the instructions, I want to rely on the form because that gets me out from under Zettelmaier. Thank you. Thank you, Your Honor. Thank you. We'll have you back on rebuttal. Yes. Good. Ms. Ritter. Good afternoon. Good afternoon. May it please the Court. My name is Judy Ritter, and I represent the appellee, Mumia Abu-Jamal. In 2008, this Court found that when the Pennsylvania Supreme Court denied the Mills claim that it was an objectively unreasonable decision. There's nothing in Smith v. Spisak that sheds any doubt on the correctness of this Court's opinion. Spisak is very, very different, as the Court has already pointed out, from the record here with regard to the verdict form and the jury instructions. But the point that your opposing counsel makes is that maybe the form in Spisak, and I think it was tough, I don't think the Court even had all of the verdict form and the instructions, I think one thing was missing at one point. The verdict form apparently has not been around for a number of years. Not been found. It was lost. But bottom line, while the form or the instructions were silent with respect to unanimity on mitigating circumstances, nonetheless, you had to find a mitigating circumstance before you could do the balancing test because at the guilt phase, they had found aggravating circumstances. So you had to offset it with something mitigating. So indirectly, the jury had defined it, and there was silence. And the Court, in effect, said in Spisak that we don't find that to be a problem. I mean, that really seems to be the crux of their argument. What makes you say that this is any different? I think that that probably is the crux of the argument. But what you have in Spisak is an absence of instructions with regard to the handling of mitigation, the handling of mitigators. In fact, all they were told was this is what we mean by mitigation. It can be hysteria of the defendant, background, character, mental disease, and that's it, and then just a reference that it would be balanced. So there's an absence of instruction that could have misled the jury. It's silent with regard to how to consider mitigation. Is it silent here as well? No. It's really not silent here because when the verdict form here, it specifically tells, as the Court has just pointed out, it specifically tells the jury, if you look at Number 2 again, it starts off with the lead language, we, the jury, have found unanimously. Subpart, the second subpart, calls for a reporting back of what the mitigating circumstances are. Yeah, but didn't the Supreme Court pooh-pooh our, or Spisak pooh-pooh the claim that this proximity of unanimously to the language, didn't they make small of that, that we found to be substantial? You know, I don't know that they did make small of that, but I think it's not even just the proximity that's a problem here. It's that the jury was told that they needed to report back on what the mitigators were, and the only thing they were told with regard to how to find that was the word unanimously. When you look on Page 3, which is a listing of the possible mitigators in our verdict form, there's a small space at the end of each one for the jury to put a checkmark or not. I cannot imagine how anybody on this jury could think that there would be any fashion for reporting something that wasn't unanimously found. In the instructions to this jury, the judge told the jury that whatever they checked off on the last page would be their findings, those findings would be reported back on the first page, and the verdict would depend on their findings. So what was really told to the jury was that you have to make findings on mitigators. The only thing that would suggest whether or not to be unanimous says unanimous, and then they're told that your verdict will depend on those findings. So, in fact, the Spesak verdict form simply had a space for the verdict. There were two sheets given. The verdict form is described in its entirety in the Supreme Court opinion. I think that's on page, it's 130 Supreme Court at 684 is where they describe the verdict form. There were four counts, and the verdict form, they had two sheets for each count. One said that we find that there are no mitigators in the aggravated, we find the aggravators, we find no mitigators, we vote for death or we recommend death. The other sheet said we find that the aggravators are outweighed by the mitigators and then we recommend a life sentence. That's all this verdict form says. There was no listing of mitigators. There was no asking for it to be reported. And so there was nothing that could have misled the jury with regard to whether or not they had to be unanimous in order to consider it. In our case, there was. You know, the Spesak obviously is troublesome to us as well as to you, I believe. It should be. The case is here for some reason. And there are five things that I can recognize which are similar with this case, Mill's problems as with that Spesak seems to lean for us to reconsider our prior decision. The first thing is that we emphasize that the unanimity requirement in the instructions and the verdict form. And the Spesak court said, well, that only had to do with balancing of the mitigating and the aggravating. It had nothing to do with how you find the mitigating. And let me tick off the five things that I see that are significant points that the Commonwealth has relied upon and that I think you have to speak to. The second thing is that, as in Spesak, the jury here was never told specifically that, look, as to the mitigating, you're individually in this. You don't have to be. And that's the same thing that's happened in Spesak. Court found no problem with that in Spesak. And that was a charge in this case. We found some difficulty with it in our original opinion. And the Commonwealth repeats the assertion in their brief that the defendant in Spesak raised many of the same points relied on by us in our original opinion that the jury was collectively, and you heard it here just a few minutes ago, told that you and instructed that every one of you are the jury, that it's the jury, not your. It referred to the jury in the totality, not in the individual. And all 12 juries were required to sign the form, once again emphasizing unanimity. And the third thing is, of course, the absence of any express instruction as to how to find mitigating. And as in Spesak, the jury was expressly told to consider all the evidence. These are like the five points that the Commonwealth raised, not me, and that are strikingly some similarity between our case and Spesak, in which they attack our prior opinion, which now has been vacated, as being inappropriate under the Spesak decision, which now has clarified the law, if not confused it somewhat. Well, a general comment, and then I'll try to address the ones that I think I took down when you were ticking off the five. Generally, Spesak applied Mills to what happened in Spesak and found that it was incorrect to find Mills' error. We don't really dispute that. Our case is very, very different, and the fact that they found no Mills' error in a case where actually Mills hadn't even been raised directly by the litigants throughout most of the litigation, but there really was nothing there that the court could look back on and say, by telling the jury X and Y, you created a reasonable likelihood that they would think they had to be unanimous in order to find mitigation. Yes, in Spesak the jury was told they had to be unanimous, but only in the weighing, and that statement that was made to Spesak's jury was a correct statement of law. But the point is they had to somehow find a mitigating circumstance in order to do the weighing, correct? Correct. So the question then becomes, well, what is the standard? Is it just one juror, or do all 12 have to find a mitigating circumstance? Well, you know, Spesak's jury, I would guess, of course we all speculate about what they think, but Spesak's jury probably didn't have guidance with regard to that. But the jury in our case, if they had guidance one way or the other, it was suggesting that they had to be unanimous. Is there anything in the Spesak instructions or the form that gave them any guidance on finding the mitigating factor? No. Really, there was nothing, and they weren't even asked to find, wouldn't even use that word find, whereas in our case the jury was told, you will find, and finding was, as you mentioned also, they talked to the jury as you, the jury, as a group. They were told to make a group decision about mitigation. They were told to check it off on the last page, and they were told to write what they put on the last page on the first page and to then report it that way. And so here we don't have an absence of advice, if you will, about how to consider mitigators. We have advice about it. What's the advice that they got? The advice is, back to page one of the verdict form, number two, we the jury have found unanimously, and the very last line, which is under that heading, is that the mitigating circumstance is or are blank. And they were told to take what they put on the last page and put it there on the first page. Well, isn't that somewhat the same in Mills? They weren't specifically told that, in Mills, they weren't specifically told in Spisak that they individually have to find mitigating circumstances. They weren't. But that's the absence of that kind of instruction all by itself. I mean, we can see that our jury wasn't, that there wasn't the specific things like that said to the jury. But you have to look at all of the other factors, everything contained in the verdict form and everything in the instructions. But that factor weighs heavily against you. The court found no problem with that in Spisak. With what? With the fact that there was no chart instructions as to how to find mitigating factors or circumstances. That's right. As in this case. Well, no, but in this case, again, I would just say that they were instructed. There was a reasonable likelihood, let's say, that they were led to believe that they needed to be unanimous before finding a mitigator. You know, the district attorney makes what I think is sort of a puzzling argument in their brief about distinguishing between the jury thinking they had to be unanimous, saying that even if a jury thinks they have to be unanimous before they can find a mitigator, that doesn't mean they can't still consider that mitigator that they weren't unanimous on. In Spisak on page 92 of the jury instructions, it has, starting with line 11, mitigating factors. What then are mitigating factors? Mitigating factors are those which, while not excusing or justifying the offense or offenses may, in fairness and mercy, be considered by you as extenuating or reducing the degree of the defendant's responsibility or punishment. And as Judge Cowens pointed out previously, the word you means the jury as a whole. It doesn't mean an individual juror. Can't you extrapolate from that to say that where there is silence, it doesn't necessarily equate to a reasonable likelihood that there was a confusion among jurors that they couldn't consider constitutional matters or evidence of mitigating circumstances? You know, I think what you means can depend on the context. And while it's certainly possible that you will always be seen to mean you, the entire jury, in the context in the Spisak instructions, it could have just as well meant to those jurors that they considered individually, whereas you, in our case, given the verdict form and the fact that they talk about you as we, the jury, unanimously sentenced and we, the jury, have found unanimously, it changes a little bit the likely interpretation of what the word you means. But again, you know, the absence of advice about how to consider mitigators probably runs the risk that the jury would think they have to be unanimous. The U.S. Supreme Court said, though, all by itself, it's not a Mills violation. It's not going to require reversal. But here we really do have more than that. We have the jury specifically told to find a mitigator underneath the heading that says that we found unanimously, report what it is. How could even, you know... Not the prior opinion, but in Spisak, Poo Poo, the concept of proximity of unanimously, we thought it was a big thing in our opinion that the proximity of words unanimous and we said that is a factor that we have to consider here. And so the fact that unanimous is all over the place doesn't seem to make that much difference to the Supreme Court. Well, you know, maybe not, but I'm not sure it's really just about proximity. On our verdict form, it's really about, you know, the heading of we have found unanimously, subpart one, at least one aggravating circumstances, no mitigating circumstances. Subpart two contains the requirement that you report the mitigator found. It's not really about the proximity. I understand the proximity has, you know, can be challenged. And just to clarify, Frye and Banks talked about proximity of the word unanimous or unanimity with mitigating, saying it was seven words. In Zettermeyer, they said, well, it was 17 words. But we, in our opinion, or the opinion written by Judge Sirica, I don't recall, we said we would not sentence PARCE. Right. I don't think this case, I don't think this Court's earlier opinion was based upon proximity of the word unanimity. And, you know, I also want to point out really how similar this case is to Mill's. You know, and the Supreme Court in Spisak certainly did not change Mill's. They did not restrict Mill's, narrow it in any way. They reaffirmed Mill's. This case is very, very much like Mill's. In fact, in some ways, it's even more of a serious problem here. It's even more of a Mill's violation than Mill's, because in Mill's, they had a similar verdict form with regard to. That's hard to say. Mill's said that you must be unanimous in finding a mitigating circumstance. That was an instruction. That's the one end of the spectrum. The flip to that is what you put into your jury instruction or your verdict form, that you do not have to be unanimous in finding a mitigating circumstance. And everything else is in the middle, and that's what we have as a case in the middle. Well, certainly it can't be that, and I know the district attorney makes much of this, but it cannot be that the only time there's a Mill's violation is if the jury is told yes. I agree with you. Because otherwise you wouldn't have the Boyd analysis. The point is that the jury here was not instructed directly that it must be unanimous in finding a mitigating circumstance. Perhaps not. The question then becomes, is there a reasonable likelihood that the jury perceived or jurors perceived themselves as precluded from finding a mitigating circumstance? It only takes one. That's correct. But in Mill's, the Supreme Court also believed that the verdict form and the way the verdict form was written with a list of mitigators that the jury needed to write yes or no next to was very significant. And even the Maryland Court of Appeals said, well, the fact that they could write and had to write no might mean to them that they thought they'd only write no if they unanimously rejected a mitigator. In our case, it's just a checkmark next to what you found, and I cannot imagine any likelihood that a juror would look at this page. With respect to this case of the mitigating circumstances listed, the one that they said existed was that no significant history of prior criminal convictions. Yes. And then there's a catch-all at the end of any other mitigating matter concerning the character or record of the defendant. But in between, was there any evidence put on that the defendant was under the influence of extreme mental or emotional disturbance? There was, and it wasn't just that mitigator. There was actually a fair amount of evidence, and it was during a lot of it, and it was during the guilt phase, but the jury was told they could consider it during the penalty phase. There were about 15 witnesses, and the witnesses testified about the defendant's excellent reputation, about his having been a reporter, about his having been a peace advocate, engaged in community activities, that he was known to have been involved in dealing with tense situations. He was the president of the Alliance for Black Journalists. What does that have to do with extreme mental or emotional disturbance? Well, no, I'm saying in addition to that. And there was also his age. He was 27 at the time. And so there was evidence. There was a fair amount of evidence, and in fact, I think it's. . . I don't think 27, I mean, that's the next one, the youth or advanced age of the defendant at the time of the crime. I don't think 27 is considered to be so young that you should take it into account as a mitigating circumstance. Is there any case that would say that under 27 or under 25, you'd take that? I don't know. I don't believe that there's a case that says it. But I also don't think that it's a hard and fast rule with regard to whether a jury would consider what they consider a younger versus advanced age. I suppose your point was it's whatever one juror thinks. Right, and we don't know why nothing else. At the end, the response to that is, is it reasonably likely that any jury would so think? Well, that's the inquiry, whether it's a reasonable likelihood that the jury would think that they had to be unanimous. And these instructions in this verdict form gave. . . that they had to be unanimous. In the light of Spezak, how can our prior ruling of this Court stand in light of Zettelmeyer, which was relied upon by the Supreme Court of Pennsylvania, and use virtually the same verdict form and instructions as in this case? No, but actually it was very different. Zettelmeyer was a lot like Spezak in the verdict form. The Zettelmeyer verdict form was . . . did not contain a requirement of reporting on what mitigators were found. It did not list the mitigators. In fact, this Court . . . actually, there was language in this Court's opinion in Zettelmeyer specifically said that there was nothing about the way that verdict form was written that would suggest the jury would have less than free reign to consider mitigators on an individual juror basis. So it's really like Spezak. Zettelmeyer is very much like Spezak, and the verdict form is different than the later cases considered by this Court. Banks and . . . well, Frey and Zettelmeyer were very similar, but Banks and Albrecht in our case. So Zettelmeyer is different. And so it remains that it was an unreasonable application, even in light of Zettelmeyer, for the court . . . for the Pennsylvania Supreme Court to look at our verdict form and find no mills error, because our verdict form was very different from Zettelmeyer, for the same reasons that it's different than Spezak. Anything else you have for us? Yeah, just very . . . since I have a couple of minutes, I just wanted to . . . I won't talk about the risk of confusion argument because I know the Court mentioned that at the beginning, and I know is not concerned that, you know, that they're using the wrong standard or that there's any evidence of that. I guess the only thing I'd . . . I'd just like to mention that, you know, in addition to the Spezak Court not finding . . . not changing mills in any way, they also didn't change AEDPA and the way AEDPA should be applied to these situations. There's nothing about . . . that would change your analysis in looking to see whether or not there was an unreasonable application. In closing, then, I'd just like to read a quote from Mills, a brief quote from the Mills decision. Mills Court said, Evolving standards of societal decency have imposed a correspondingly high requirement of reliability on the determination that death is the appropriate penalty in a particular case. If the defendant in Mills was determined that his jury there was too much of a risk that there would be an unreliable determination of whether death was appropriate, I don't really see how the same couldn't be said of my client's situation. Good. Anything else? Thank you. Thank you, Mr. Ritter. Mr. Burns. The argument that Spezak and this case are different continues to rely on the idea that because the jurors were told they had to be unanimous about the weighing decision, that that somehow migrated over to the mitigation decision. If you look at the instructions and the way they were summarized by the Supreme Court in the instructions here, in one case, the instruction said the jury unanimously finds one of our aggravating circumstances which outweigh any mitigating circumstances. In the other case, the jury had to find unanimously and beyond reasonable doubt that each of the aggravating factors outweighed any mitigating circumstances. The instructions are the same. And that's where the unanimity instruction resides in the penalty phase. That's the only point at which the jurors in Spezak or in this case were told that they had to be unanimous about anything. And what's missing in both cases is an instruction to the jury that they had to be unanimous to find a mitigating circumstance was proven. Not only are the cases the same in that respect, but they are the same in the respect that the arguments that Spezak made are the same arguments that are being made by the defendant. The argument that the lead-in language referred to the jury as being we the jury was made in Spezak. The argument that the word you was used was made in Spezak. The argument that the jurors were not affirmatively told that they had to treat aggravating and mitigating circumstances differently was made in Spezak. The idea that the juror was told to make a group decision, again, an argument made in Spezak. All these arguments were rejected. And the idea that this case is similar to Mills is also a non-starter for the simple reason that in Mills and in McCoy, the jurors were not merely told that they had to make a unanimous decision to find a mitigating circumstance. They were actually told that if they failed to reach a unanimous agreement, that they were to treat that disagreement as a finding against the mitigating circumstance. Nothing like that happened here. In this case, the jury was told repeatedly, as has been pointed out, that they had to make the unanimous decision as to some things. And when they were told that, they were told that that was supposed to be a decision by each and every juror. There was no instruction in this case saying, and by the way, if you fail to reach a unanimous agreement, treat that as a decision against the mitigating circumstance. So that's not a similarity to Mills, and it's really a similarity to the situation in Spezak because the jurors there were only told... I agree with you. Everything post-Mills is the next case. I mean, Mills is easy. But the importance of the instruction that the jurors would have to, in Mills, or Annie McCoy, treat an inability to agree as a finding against the aggravating circumstances important because it was that factor that led to the situation in which one juror or a few jurors could veto the mitigating circumstance. If... You haven't met Mrs. Ritter's argument that the verdict form instructions here differ significantly from Spezak. That's the basis of her argument. And she pointed out a number of differences which are quite significant between this case and Spezak. And I think I've mentioned some of them, but none of them are material differences. But that's the question before us because that's why the case is here, because of Spezak. And I think you should spend the rest of your time to enlighten us as to why those differences which she points out are insignificant. For example, the word unanimous, I don't believe, was used in the jury instructions in Spezak at all, was it? No. What they used were the words, and I have them here, the words they used were, we the jury, all 12 members of the jury, all 12 agree, all 12 of you must agree. Now, it's true that they didn't use the word unanimous, but those words mean unanimous. But what they used, if all 12 members of the jury find by proof beyond a reasonable doubt that the aggravating circumstance  then you must return that finding to the court. That's about balancing. And it really seemed to be that that was the context of the opinion that was written by the court in Spezak. It was about, it's about balancing. And unanimously was used here time and time again. It was used several times. I would not agree with the characterization that it was used time and time again. And the point is that here as in Spezak, It was used in our case, what, how many times in the jury instructions? Seven, eight, nine? And in proximity, which in fairness to you, I've got to say, our opinion relied upon to some extent and has been undermined to some extent. But it's there, it's there continuously and in quite close proximity to their, the way they find things. Well, maybe we'd add clarity to look at a contemporary decision of a federal appellate court that was in existence before the State Supreme Court ruled, a case called Nolan v. French from the Third, from the Fourth Circuit. I'm sorry. This was decided nine months before the Pennsylvania Supreme Court ruled in this case. Remember, we're talking about a AEDPA standard here. The question is whether or not the decision of the Pennsylvania Supreme Court was merely reasonable. In Nolan v. French, and this is a case that we cited in our previous brief, the judge instructed the jury to answer four issues. The judge told the jury that they had to unanimously find, beyond a reasonable doubt, the existence of the aggravating circumstance. They had unanimously find the aggravating circumstance was sufficiently substantial to call for the death penalty. The jury had to find one or more mitigating circumstances, decide whether or not they were in existence. And then the jury was told they had to unanimously find, beyond a reasonable doubt, that the aggravating circumstances outweighed the mitigating circumstances. And in addition, before the jury was released to begin deliberations, the trial court told them, after you have reached a unanimous decision as to each issue, have your foreman fill out the appropriate forms. Now, the word unanimous was used again and again and again, and the Fourth Circuit determined that there was no Mills error in that case. And even though the word unanimous was used repeatedly and in every possible context, except in the context of deciding mitigating circumstances, that there was no Mills error in that particular case. But how does that affect a court deciding, Pennsylvania Supreme Court deciding a case in this circuit where the only thing before it was, besides Mills and McCoy and Boyd from the Supreme Court, was Zettelmoyer from our court? Zettelmoyer and Fry. Fry was 97, wasn't it? No, Fry was decided before the Supreme Court of Pennsylvania decided this case. And if the decisions of the Third Circuit were the only decisions that mattered, then the Supreme Court could reasonably choose to take the Zettelmoyer approach instead of the Fry approach. But that's not the case. There isn't a precedential relationship between the Third Circuit and the Supreme Court of Pennsylvania. You can look at decisions of other federal appellate courts to decide whether or not what the state court did in this case was reasonable. If a federal appellate court, on facts that, according to the appellee's argument, were much worse for the state, actually found that the state properly implied the instructions that there was no Mills error in that case, there's certainly no way of establishing that the state Supreme Court in this case acted unreasonably because as the argument has been going, the point has been made that frequent use of the word unanimous is something that creates a possibility that the jury is going to apply a unanimity instruction that wasn't given to the mitigating circumstances. No, I think what we're saying is that word plus other aspects can create a context in which a reasonable juror or a jury may perceive that it needs to be unanimous in finding a mitigating circumstance. There's a reasonable likelihood that that could happen. I understand the point, but most of those circumstances to which Your Honor's question refers were present in Spizak, like the use of the word you, like the lead in language, like telling the jurors that they had to decide what the mitigating circumstances were. They didn't have to write them down, but in Spizak they had to decide what they were, that there was no affirmative instruction, that they had to treat the aggravating mitigating circumstances differently. That was an argument that Spizak actually made. In his brief to the United States Supreme Court, the appellee makes the same argument. In fact, there are two pages removed in their separate briefs. Spizak made it on page 24 of his brief, and the appellee makes it on page 22 of his. So the same arguments are being made, and the same arguments that were rejected by the Supreme Court is not Spizak. Might the best argument from your perspective be that if the jury was confused, if a juror was confused, why didn't they ask a question of the judge? There's no reason to suppose that they were confused. In the absence of a unanimity instruction... That was a softball. Sorry? That was a softball. Well, that was your position in one of your... No one asked that question, and therefore they really weren't confused. That was your position, that no one asked a question, therefore they weren't confused. How does that prove that they were not confused but they didn't ask a question? The burden of the state is not to establish whether or not the jurors may have been confused. The burden of the state is to show that there was nothing in the instructions that was preventing the jurors, individually or collectively, from getting at and using a mitigating circumstance. In the absence of a unanimity instruction, there's nothing preventing one juror from finding that a mitigating circumstance was proven and using that mitigating circumstance in the weighing stage. And that's why there's a difference between this case and Mills and a similarity between this case and Spies Act because in neither case was the jury told that they had to be unanimous to find a mitigating circumstance and that if they failed to agree that that should be treated as a finding that the mitigating circumstance was not proven. Thank you, Your Honors. Good. Any other questions? Thank you, Mr. Burns. We thank counsel for an excellent argument. We will take the matter under advisement.